# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE

### Assigned on Briefs December 14, 2004

## JAVVOR THOMAS v. STATE OF TENNESSEE

### Direct Appeal from the Criminal Court for Knox County
### No. 73854     Richard R. Baumgartner, Judge

---

### No. E2004-01486-CCA-R3-PC - Filed March 1, 2005

---

The petitioner appeals the dismissal of his petition for post-conviction relief from his conviction for second degree murder, arguing that the post-conviction court erred in finding that he received effective assistance of trial counsel. Following our review, we affirm the dismissal of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JAMES CURWOOD WITT, JR., J., joined.

Gerald L. Gulley, Jr., Knoxville, Tennessee, for the appellant, Javvor Thomas.

Paul G. Summers, Attorney General and Reporter; Seth P. Kestner, Assistant Attorney General; Randall E. Nichols, District Attorney General; and Philip H. Morton, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

The petitioner filed a *pro se* petition for post-conviction relief on December 10, 2001, in which he stated that he entered a plea of guilty to second degree murder on June 21, 2001, in the Knox County Criminal Court, and received a sentence of twenty years at 100%, to be served in the Department of Correction.[1] The petition asserted multiple grounds for relief, including ineffective counsel. Counsel was appointed, and on September 16, 2003, an amended petition was filed alleging

---

[1]The record does not contain a judgment form or transcripts from the guilty plea or sentencing hearing. At the post-conviction hearing, the petitioner stated that he was arrested when he was fourteen years old for the murder of Ashley Carden. He also agreed that the date of the entry of the guilty plea was June 12, 2001.

various claims of ineffective assistance of counsel.[2] On appeal, the petitioner has limited his allegations of ineffective assistance of counsel to two claims: (1) counsel failed to appeal the juvenile court transfer; and (2) counsel prevented the withdrawal of the guilty plea.

At the post-conviction hearing held on January 29, 2004, the petitioner testified that he was originally charged for the murder of Ashley Carden in 1995 in the Knox County Juvenile Court. A transfer hearing was conducted in juvenile court, at which the petitioner was represented by counsel. Once the case was transferred to the Knox County Criminal Court, the petitioner was represented by three attorneys from the University of Tennessee College of Law Legal Clinic and was no longer represented by counsel from juvenile court. The petitioner entered into a plea agreement on June 12, 2001, but when he reported for sentencing on June 21, 2001, he had changed his mind and wanted to withdraw his plea. At some point on June 21, while outside the courtroom with junior counsel, the petitioner told counsel he wanted to withdraw his plea, but she told him that if he withdrew his plea, he could get a life sentence and his counsel from the Legal Clinic would be removed from the case. According to the petitioner, junior counsel also told him that she did not think he could withdraw the plea at that time. The petitioner could not state for sure if the other attorneys heard this exchange but stated that "[junior counsel] had to tell them, because they always, you know, talked to each other about the case." On cross-examination, the petitioner acknowledged that he had told the judge "no" on June 12 when he was asked if anyone had coerced or threatened him into pleading guilty. He also acknowledged that he had given a full confession to the police after he was arrested but said he had decided he "would have rather took [his] chances with" the statement at a trial for first degree murder than plead guilty. After the hallway exchange with counsel concerning withdrawing his guilty plea, the petitioner did not tell the judge at sentencing that he wanted to withdraw his guilty plea, but he "just went ahead with it" because of what counsel had told him concerning a life sentence and his legal team being removed from the case.

Lead trial counsel, a professor at the University of Tennessee College of Law, testified that he assisted the petitioner's counsel at the juvenile court transfer hearing, and once the petitioner was transferred to criminal court, he was assisted at various stages by two other attorneys. During the plea agreement negotiations, the petitioner "reluctantly agreed" to the State's offer of second degree murder and did so "[a]s voluntarily as he could under the circumstances." On the morning the petitioner reported for sentencing, he wanted to know "if he had to go through with his plea." Lead counsel stated that all the lawyers were in the hallway when the petitioner asked about withdrawing his plea, but it was a "hurried discussion" because they were late to court. Although counsel could not "remember anybody telling [the petitioner] he couldn't withdraw his plea," counsel advised the petitioner that if he did withdraw his plea, the State would "seek a first degree murder conviction which would carry a life sentence." Counsel also told the petitioner that if he withdrew his plea, the current defense team "probably couldn't remain as his lawyers" due to their lost "credibility" with the district attorney's office. Counsel stated that he "didn't guarantee [the petitioner] he'd get a life sentence" but, instead, told him that he would get a life sentence if he was convicted at trial.

---

[2]The petition also alleged a defective indictment and "mental limitations" affecting the petitioner's guilty plea; however, these claims have been abandoned on appeal.

The post-conviction court dismissed the petition at the conclusion of the hearing, issuing detailed and lengthy findings of fact and conclusions of law which, upon the order of the court, were subsequently transcribed and filed as a memorandum opinion on March 1, 2004. Among other things, the court found that the guilty plea was "knowing and voluntary" and counsel were "extremely effective" in their representation. Concerning the conversation between counsel and the petitioner about withdrawing the plea, the court concluded that counsel gave the petitioner "correct statements of the law," which did not "amount to ineffective assistance of counsel."

## ANALYSIS

### I. Post-Conviction Standard of Review

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2003). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999); Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de novo*, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns, 6 S.W.3d at 461.

### II. Ineffective Assistance of Counsel

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687, 104 S. Ct. at 2064.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688, 104 S. Ct. at 2065; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). When analyzing a petitioner's allegations of ineffective assistance of counsel, this court must indulge in a strong presumption that the conduct of counsel fell within the range of reasonable professional assistance, see Strickland, 466 U.S. at 690, 104 S. Ct. at 2066, and may not second-guess the tactical and strategic choices made by trial counsel unless they were uninformed because of inadequate preparation, see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982).

The prejudice prong of the test is satisfied by showing a reasonable probability, i.e., a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. When a petitioner's ineffective assistance claim is made in the context of a conviction stemming from a guilty plea, he must prove a reasonable probability that were it not for deficiencies in his counsel's performance, he would not have pled guilty but instead would have insisted on going to trial. See Shazel v. State, 966 S.W.2d 414, 416 (Tenn. 1998). "In cases involving a guilty plea or plea of *nolo contendere*, the petitioner must show 'prejudice' by demonstrating that, but for counsel's errors, he would not have pleaded guilty but would have insisted upon going to trial." Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998) (citing Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985); Bankston v. State, 815 S.W.2d 213, 215 (Tenn. Crim. App. 1991)).

Because both prongs of the test must be satisfied, a failure to show either deficient performance or resulting prejudice results in a failure to establish the claim. See Henley, 960 S.W.2d at 580. For this reason, courts need not approach the Strickland test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697, 104 S. Ct. at 2069; see also Goad, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

The petitioner argues on appeal that trial counsel were ineffective for not appealing the juvenile court transfer and/or not advising the petitioner of his right to appeal the transfer. Additionally, the petitioner argues trial counsel were deficient in not allowing him to withdraw his guilty plea at the sentencing hearing.

We begin by noting that the post-conviction court did not address the issue of the appeal of the juvenile court transfer proceeding[3] because the issue was not pursued at the post-conviction hearing. The original petition stated in passing that his "lawyers refused petitioner, petitioner's

---

[3]We note that juvenile court transfer proceedings, and appeals of such proceedings, are governed by Tennessee Code Annotated sections 37-1-134 and 37-1-159 (2003). There is no proof in the record that these statutory procedures were not followed in this case.

mother and family's plea and begging to appeal petitioner's transfer hearing. The defense team made it clear in no way will they request nor petition the court to allow an appeal of the transfer hearing." The only testimony at the post-conviction hearing concerning the juvenile court transfer hearing was assertions by the petitioner concerning the proceedings:

> Q      All right. At the end of the transfer hearing, what was the result? What did the Juvenile Court Judge do?
>
> A      Sent me up to adult court.
>
> Q      All right. Did you discuss with your lawyers, at that time, you know, whether you had any rights to appeal the decision of the Juvenile Court Judge?
>
> A      No, sir. I didn't -- at the time, you know, I didn't even know what really was going on because I was so young. I ain't never been in nothing like that before -- never been.

Counsel at the juvenile proceedings was not called as a witness at the post-conviction hearing. In addition, lead trial counsel, the only attorney called as a witness at the hearing, was not questioned about this issue. We note that Tennessee Code Annotated section 37-1-159(d) provides "[t]here is no civil or interlocutory appeal from a juvenile court's disposition pursuant to § 37-1-134." The record on appeal does not include a transcript of the juvenile court hearing. Generally, when the appellate record is inadequate, the appellate court is precluded from considering the issue, and the trial court's ruling is presumed correct. See State v. Oody, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991); State v. Roberts, 755 S.W.2d 833, 836 (Tenn. Crim. App. 1988). In this case, we are precluded from reviewing any claim concerning the juvenile court transfer proceeding, and we must presume that the relevant statutory procedures were followed by trial counsel and the court.

As to the claim that counsel prevented the petitioner from withdrawing his guilty plea, the petitioner testified at the post-conviction hearing that he changed his mind about accepting the plea agreement:

> Because I had -- you know I had thought about it for about -- I'd say about a week and a couple of days to think about the decision I had already made for my life, and I was -- my uncle and them was [sic] telling me . . . about these certain witnesses that they was calling against me that really wasn't -- really wasn't no good to the jury because their statements had been changed several times and then the psychiatrist testifying against me. They was [sic] saying I had a better chance, even if I would have got found guilty than going to another courtroom and try to appeal that. So that's what really made me say that I didn't want to take the plead [sic] anymore. And I told -- I told my attorneys right out here outside from this door, and they was like -- well [junior counsel] . . . was like this. If -- she said, "I don't even know if

you can take the plea back. And if you do take the plea back, they're going to put us off of your case and you [sic] going to get a life sentence." And that was it.

. . . .

Q     Did you stop and tell the Judge, "I want to take this back? I don't want to do this?"

A     No, not -- the only reason why I didn't tell the Judge - - the reason why I didn't state nothing is because I had told my lawyer. And my lawyer told me that if I was to take this plea back, that they try to give me a life sentence in prison, and that they going to get threw [sic] off my case then, so I just went ahead with it.

Q     So as I understand what you're telling us, that when you talked to your lawyers about taking about [sic] the plea, they explained to you the consequences of doing that, didn't they?

A     No, they didn't explain -- they told me. They didn't explain –

Q     That you could receive a life sentence?

A     That I would get a life sentence. They didn't say that I could get no life sentence.

Lead trial counsel testified that the petitioner did ask about withdrawing his plea right before the sentencing hearing and that counsel advised him of his options:

Q     And do you recall after the plea any discussion with him or any complaint about having entered the plea when he didn't want to or anything such as that?

A     I recall a conversation on the morning he came into custody. And as I recall it, he wanted to know, I think, if he had to go through with his plea. I can't -- I don't remember anybody telling him he couldn't withdraw his plea. I do remember saying that if he did withdraw his plea, he needed to understand that the State then could seek a first degree murder conviction which would carry a life sentence. An automatic life sentence. I recall telling him that we probably -- or somebody told him that we probably couldn't remain as his lawyers because we would think that we wouldn't have any credibility with the District Attorney's Office, were there to be further plea negotiations, since he had entered a plea. We told him that they had, in a sense, relied on our representations. And we didn't think we would be very effective, as a negotiator for him, were he to seek to negotiate again some resolution.

-6-

Q       And of course, as facts of law at that point in time was he could, under certain circumstances, move the Court to withdraw the guilty plea. And of course, you knew that?

A       Right.

Q       And from what I understand you to say, you didn't tell him, "No, you can't do that. You cannot withdraw your guilty plea."

A       I don't believe anybody told him that.

Q       But there was some discussion about the right to do that and what might happen if that did happen; is that your best recollection?

A       That's my best recollection.

Q       And did that, as he said, take place maybe out in the hallway or something?

A       That's what I remember.

The post-conviction court found that the petitioner had failed to show that counsel were ineffective or that he had been prejudiced:

I think the last issue that we need to address is your desire to withdraw your plea on June 21st when you reported to the Court to begin serving your sentence. Again, I find it very believable that you would be hesitant about coming into court and going into custody to serve a 20 year sentence. I believe that that's – that that's true. And I think it's also probably true that you mentioned withdrawing your plea. I think that [lead trial counsel] has -- has acknowledged that there was a conversation about that and told you that if you withdrew your plea, if you were successful in withdrawing your plea that you would be looking at a first degree murder prosecution in which if you were convicted you could get a life sentence. And that they would likely not be able to continue in that representation if you did that because of the position it would put them in with the prosecution. That's all true. Those were all true statements. They probably could not have continued their representation. You would have been looking at a first degree murder prosecution. If convicted you would have been sentenced to life imprisonment. So none of those things that they told you amount to ineffective assistance of counsel. They're correct statements of the law.

I do not believe it when you say that they guaranteed you you would get a life sentence because -- and I specifically asked [lead trial counsel] that and he confirms my suspicion that -- that they did not tell you that you were going to get a life

-7-

sentence if you withdrew your plea for second degree murder, but told you that that was a distinct possibility, which it was.

When you look at all of the evidence in this case . . . I believe that these lawyers did Yeoman's work on your behalf. That they were extremely effective in their representation of you. And, in fact, secured for you a favorable disposition of this case based on the evidence that was out there against you.

So I don't think under the applicable standards of Strickland v. Washington and it's prodigy that you have established that there's been any ineffective assistance of counsel or any prejudice to you in this case. And for those reasons I deny your petition for post conviction relief.

The record easily supports the finding that counsel's advice was accurate and thorough, and the petitioner failed to establish either that counsel were ineffective or that he was prejudiced by counsel's actions.

## CONCLUSION

We conclude that the petitioner failed to meet his burden of demonstrating that he was denied effective assistance of counsel. Accordingly, we affirm the dismissal of the petition for post-conviction relief.

_____
ALAN E. GLENN, JUDGE